IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 07-cv-00916-LTB-BNB
(Consolidated w/ 07-cv-01025-LTB-BNB)

BERNARD HAROLD ANDERSON, individually and as representative plaintiffs on behalf of all other similarly situated

    Plaintiffs,

v.

MERIT ENERGY COMPANY, a Delaware corporation,

    Defendant.

___

Civil Action No. 07-cv-01025-LTB-BNB

NILES MILLER,
RAYMOND AND SALLY MILLER,
RICHARD PETERSON,
TED AMSBAUGH,
WILBERT WIEDEMAN,
PAUL HUNGENBERG,
BUDDY BAKER,
ROBERT L. ARMANTROUT, and
THOMAS SCHEIRMAN, on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

MERIT ENERGY COMPANY, a Delaware corporation,

    Defendant.

___

## ORDER
___

    This case is before me on Plaintiffs' Motion for Class Certification [Doc # 35]. After consideration of the motion, related pleadings, and the case file, I grant the motion as set forth

below.

## I. Background

Plaintiffs in this case seek to determine the proper method of calculating natural gas royalties under Colorado law and to recover alleged past underpayments of royalties on natural gas production. More specifically, Plaintiffs allege that Defendant Merit Energy Corporation ("Merit") improperly paid royalties based on the selling price of raw gas to third parties that processed and delivered it to the commercial marketplace as opposed to the selling price of the gas in the commercial marketplace and thereby improperly imposed the costs incurred to render the gas Merit produced marketable onto the proposed plaintiff class.

The proposed plaintiff class consists of persons who have or have had a contractual right to receive royalty payments from Merit on natural gas produced from over 700 gas wells and is further defined as follows:

> All persons and entities to whom Merit has paid royalties or overriding royalties on natural gas produced from wells located in Colorado, pursuant to leases or overriding royalty agreements that do not expressly authorize the deduction of the costs incurred to market such natural gas after it is severed from the wellhead (collectively, "Royalty Agreements"). The defined Class excludes: (1) any person or entity who is a working interest owner in a Merit well on whose behalf Merit has paid royalties for natural gas production; (2) Indian tribes; (3) the United
> States of America; and (4) Merit, its affiliates, its predecessors-in-interest, and their respective employees, officers and directors.

Plaintiffs concede that the Royalty Agreements are not uniform and have identified six different types of contract provisions governing the payment of royalties. Nonetheless, Plaintiffs argue that the differences in the Royalty Agreements are immaterial because the subject agreements are identical in one critical respect. That is, none of the Royalty Agreements contain express language authorizing the deduction of costs incurred to render the gas marketable and

2

are therefore subject to the implied duty to market as set forth in *Rogers v. Westerman Farm Co.,* 29 P.3d 887 (Colo. 2001).

In *Rogers*, the Colorado Supreme Court held that absent an express provision in an oil and gas lease addressing the allocation of costs, the implied covenant to market obligates the lessee to incur those costs necessary to render the gas marketable - that is, getting the gas to a marketable condition and location. *Id.* at 906. Once the gas is marketable, any additional costs to either improve the gas or transport it are shared proportionately by the lessor and the lessee. *Id.* The Colorado Supreme Court further held that the determination of when gas is marketable, and the proper allocation of costs therefore determinable, is a question of fact. *Id.*

## II. Standard of Review

As the parties seeking class certification, Plaintiffs must first demonstrate that all four elements of Fed. R. Civ. P. 23(a) are clearly met. *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir. 2004). These elements are (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Plaintiffs must next demonstrate that the action falls within one of the three categories set forth in Fed. R. Civ. P. 23(b). *Shook*, 386 F.3d at 971. Here, Plaintiffs seek certification pursuant to Rule 23(b)(3) and must therefore show that common questions of law or fact predominate over questions affecting individual class members and that a class action is superior to other methods of resolving the controversy.

In determining whether plaintiffs have met their burden of showing that all of the prerequisites of Rule 23 have been satisfied, I may not inquire into the merits of Plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974) ("[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). I may, however, analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses. *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 382 (D. Colo. 1993). Because certification is subject to later modification, I err in favor of the maintenance of a class action. *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied,* 349 U.S. 928 (1969).

### III. Analysis

**A. The Requirements of Rule 23(a)**

**1. Numerosity**

To establish the numerosity requirement of Rule 23(a)(1), Plaintiffs must define the class adequately and establish that the class is so numerous as to render joinder of all members impracticable. *Cook,* 151 F.R.D. at 384. A class is adequately defined "if its members can be ascertained by reference to objective criteria." Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) § 21.222. Conversely, a class definition that is vague is inadequate. *See Perez v. Metabolife Int'l, Inc.* 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague ....").

Plaintiffs argue that their class definition is adequate because its members can be identified based on an objective threshold factual determination of whether their royalty

agreements contain clauses expressly allocating the costs required to make the gas Merit produces marketable. Plaintiffs have submitted two sample agreements that they contend assert such express clauses and six sample agreements that they contend do not.

Merit first argues that Plaintiffs have failed to adequately define the class because it is impossible to determine which lessors fall within the class definition and which do not. In support of this argument, Merit refers to the royalty payment provisions in each of the eight sample agreements submitted by Plaintiffs and argues that they are virtually indistinguishable. Plaintiffs, however, are not relying on these provisions to determine who falls within the class but rather on separate provisions that expressly allocate gathering and processing costs. I therefore reject Merit's argument that Plaintiffs' class definition must be rejected as vague.

Merit also argues that Plaintiffs' class definition fails because the determination of which lessors under the royalty agreements fall within the class definition and which do not requires a legal decision on the merits. A finding that a royalty agreement does not include an express provision regarding cost allocation does not, however, establish Merit's liability to the lessor under that agreement. Instead, further analysis regarding the applicability of the legal principles set forth in *Rogers,* which the parties fiercely dispute in their briefs, is necessary. *Compare Kenro, Inc. v. Fax Daily, Inc.,* 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (class certification denied where definition of proposed plaintiff class would require the court to address central issue of liability); *Capital One Bank v. Rollins,* 106 S.W.3d 286, 295 (Tex. App. 2003) (class certification was improper where class members could not be ascertained until a determination on the merits was made as to predicate legal issue on which the ultimate liability of the defendant rested). Accordingly, I likewise reject Merit's argument that Plaintiffs' class

definition fails because ascertaining which parties fall within its scope will require a legal decision on the merits and further conclude that Plaintiffs have adequately defined the proposed plaintiff class.

To satisfy the requirements of Rule 23(a)(1), Plaintiffs must also establish that the class is so numerous as to render joinder of all members impracticable. In this regard, Plaintiffs estimate that the number of potential class members is at least one thousand parties. Plaintiffs' estimate is based on a review of approximately 1,500 royalty agreements produced by Merit, all but fifty of which Plaintiffs claim would fall within the proposed class definition because they do not include express language regarding the deduction of post-production costs in the calculation of gas royalties.

In response, Merit concedes that it pays gas royalties to a large number of parties but argues that Plaintiffs have nonetheless failed to meet their burden of establishing numerosity. Merit's argument in this regard is partly predicated on the same objection it made to the adequacy of the class definition. That is, Merit argues that because it is impossible to determine which leases constitute Royalty Agreements under the class definition, it is likewise impossible to determine the number of potential class members. I have already rejected this objection because it is based on the faulty premise that Plaintiffs' are relying on the royalty payment provisions in the agreements to establish members of the proposed class.

Merit also argues that Plaintiffs have failed to demonstrate numerosity because they have failed to identify the exact percentage of the royalty owners it pays that fall within the class definition. Although such specificity may be necessary at some point, it is not required at this stage of the case. *See Cook*, 151 F.R.D. at 384. Rather, Plaintiffs's estimate based on evidence

reviewed to date is sufficient to establish a large potential class that renders joinder impracticable. The requirements of Rule 23(a)(1) have therefore been met.

### 2. Commonality

The requirement under Rule 23(a)(2) that there be questions of law or fact common to the class does not require that all the questions of law or fact raised in the case be common. *Cook,* 151 F.R.D. at 384. Rather, the commonality requirement of Rule 23(a)(2) is satisfied if there are significant common legal or factual issues. *Cook*, 151 F.R.D. at 385 (*quoting Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 64. The mere fact that questions peculiar to each member of the class remain after the common questions of the defendant's liability have been resolved do not preclude a finding that the commonality requirement has been satisfied. *Diagle v. Shell Oil Co.,* 133 F.R.D. 600, 603 (D. Colo. 1990).

Merit's analysis conflates the requirement of commonality under Rule 23(a)(2) with the requirement of predominance under Rule 23(b)(3). Rule 23(b)(3)'s predominance standard is, however, "far more demanding" than Rule 23(a)(2)'s threshold commonality requirement. *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 623-4 (1997). Since Merit does not genuinely dispute the existence of common legal or factual issues, I will consider Merit's argument that any such issues do not predominate over issues unique to the individual class members as part of my analysis under Rule 23(b)(3).

Plaintiffs have identified several common issues of fact and law including (1) whether Merit is responsible for all costs necessary to render the gas produced under the Royalty Agreements marketable; (2) determining the point at which the gas that Merit produces become commercially marketable; and (3) whether Merit's uniform practice of paying royalties under the

7

Royalty Agreements based upon the selling price of raw gas to third parties that processed and delivered it to the commercial marketplace as opposed to the amounts received from the sale of the residue gas and natural gas in the commercial marketplace constituted a breach of Merit's contractual obligations to the class members. I agree that based on the evidence and arguments presented that these are relevant and common issues in this case, and the commonality requirement of Rule 23(a)(2) is therefore satisfied.

### 3. Typicality

Rule 23 (a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class. The positions of the class representatives need not be identical to those of the other class members so long as there is a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class. *Clark v. State Farm Mut. Auto. Ins. Co.,* 245 F.R.D. 478, 484 (D. Colo. 2007). Typicality is not normally a difficult hurdle so long as the claims of the named class representatives and the other class members are based on the same legal or remedial theory. *Id.*

Plaintiffs argue that the typicality requirement is satisfied because all of the proposed class members have been damaged by Merit's uniform practice of imposing gathering and processing costs for the gas it produces onto the proposed class members and paying royalties at a significantly lower price than that received in the commercial market. Plaintiffs further argue that because their Royalty Agreements and those of the proposed plaintiff class do not contain express language authorizing them to charge the lessors with costs associated with rendering the gas it produces marketable, the Royalty Agreements are silent with respect to the allocation of such costs and therefore subject to an implied covenant to market under *Rogers*.

Merit challenges the typicality of the Plaintiffs' claims based on differences in the language of the Royalty Agreements held by the proposed class members, as well as the different histories surrounding these agreements. Notably though, Merit does not dispute Plaintiffs' contention that, notwithstanding these differences, it pays royalties to all members of the proposed class based upon the proceeds it receives from a wellhead sale of the gas.

In support of its argument regarding typicality, Merit cites *Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir. 2002), wherein the Fifth Circuit held that the typicality requirement for class certification was not satisfied in an action by the owner of a royalty interest under natural gas leases based on the implied covenant to market because the proposed class included both royalty agreements that provided for payment based on market value and those that provided for payment based on actual proceeds. This holding was, however, predicated on Texas law that distinguished between the two types of royalty agreements, finding no implied covenant to market under actual proceeds leases only. *Id.* at 562. Colorado law, and more specifically *Rogers*, makes no such distinction. *Rogers*, 29 P.3d at 891, n. 1. Merit' reliance on *Stirman* is therefore misplaced.

Because Plaintiffs have asserted claims based on the same essential facts and theory of liability as those of the proposed class members, the typicality requirement of Rule 23(a)(3) is satisfied.

**4. Adequacy of Representation**

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class. This requirement entails the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will

9

the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Willbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002) (*quoting Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs bear the initial burden of demonstrating facts to support a finding that they will adequately protect the interests of the class. *Schwartz v. Celestial Seasonings, Inc.,* 178 F.R.D. 545, 552 (D. Colo. 1998). Once Plaintiffs have made a prima facie showing of adequate representation, the burden shifts to Merit. *Id.* Absent evidence to the contrary, a presumption of adequate representation is invoked. *Id.* Plaintiffs' counsel has considerable experience litigating similar natural gas royalty underpayment cases, and I am therefore satisfied that Plaintiffs' counsel is fully capable of prosecuting this class action. The disputed issue in this case under Rule 23(a)(4) is whether Plaintiffs can adequately represent the interests of the proposed class.

Merit first argues that Plaintiffs cannot adequately represent the interests of the proposed class based on differences in the Royalty Agreements. This argument is essentially the same as that which Merit made with respect to the typicality requirement of Rule 23(a)(3), and I reject it for the same reason. That is, notwithstanding any differences that there may be in the language of the Royalty Agreements, Plaintiffs are relying on the same essential facts and legal theory to support their claims as the members of the proposed class.

Merit further argues that Plaintiffs cannot adequately represent the interests of the proposed class because they have little knowledge or interest in pursuing their claims. Curiously, Meirt concedes that Plaintiffs Wiedeman and Scheirman have some useful knowledge but discount the same based on Plaintiffs' attempt to dismiss these parties from the case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). Plaintiffs Wiedeman and Scheirman, however, remain parties

10

to this case as a result of Merit's successful efforts to defeat Plaintiffs' attempt to have them dismissed. As to the remaining Plaintiffs, Plaintiffs point out that Plaintiffs Ted Amsbaugh, Buddy Baker, Niles Miller, Raymond and Sally Miller, have acted as class representatives in similar royalty underpayment cases that were successfully prosecuted against other gas producers. Plaintiffs Amsbaugh and Baker also have significant experience in the oil and gas industry and demonstrated in their deposition testimony a general understanding of the basis of their claims against Merit. Although Plaintiffs Amsbaugh and Baker may not understand all of the legal principles underlying these claims, I conclude that they adequately represent the interests of the proposed class.

In cases involving more than one named class representative, "it is not necessary that all the representatives meet the Rule 23(a)(4) standard; as long as one of the representatives is adequate, the requirement will be met." *Cook*, 151 F.R.D. at 387 (*quoting* 7A Charles A. Wright et al., *Federal Practice and Procedure,* § 1765 at 277 (1986)). Having concluded that Plaintiffs Amsbaugh and Baker adequately represent the interests of the proposed class, I further conclude that the requirements of Rule 23(a)(4) have been met without analyzing whether the remaining named plaintiffs also adequately represent the interests of the proposed class.

## B. The requirements of Rule 23(b)(3)

### 1. Predominance

Rule 23(b)(3) first requires that I find that questions of law or fact common to the class predominate over any questions affecting individual members. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 615. "[W]hen one or more of the

central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters have to be tried separately." *Cook*, 151 F.R.D. at 388.

Merit's argument against a finding of predominance is primarily predicated on its contention that *Rogers* does not preclude the Court's consideration of extrinsic evidence to refute or modify the implied covenant to market recognized there. Consequently, Merit argues that the Court would have to consider the conduct of the parties with respect to each Royalty Agreement in order to determine the existence and scope of the implied covenant to market and that individualized issues are therefore predominant in the claims of the proposed plaintiff class.

In support of this argument, Merit cites *Elliott Indus. Ltd. P'ship v. BP Amer. Prod. Co.*, 407 F.3d 1091 (10th cir. 2005), a class action involving the deduction of post-production costs from the royalty payments on oil and gas leases. Although the Tenth Circuit reversed the order of class certification in *Elliott* on the basis that there was no subject matter jurisdiction, Merit argues that the court's dicta in a footnote that class certification would have been problematic in any event because of the large number of individual contracts at issue dictates that there is no predominance under Rule 23(b)(3) in this case. This argument fails, however, based on a fundamental differences between New Mexico law, which the Tenth Circuit applied in *Elliott*, and Colorado law, which I must apply in this case.

Under New Mexico law, an implied covenant, including the implied covenant to market under an oil and gas lease, "must arise from the presumed intention of the parties as gathered from the instrument as a whole." *Elliott*, 407 F.3d at 1112 (*quoting Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 858 P.2d 66, 80 (N.M. 1993)). Conversely, under Colorado law, the

covenant to market is implied in every oil and gas lease as a matter of law. *Garman v. Conoco, Inc.,* 886 P.2d 652, 659 (Colo. 1994). More generally, "[i]n New Mexico, oil and gas leases are interpreted like any other contract," while Colorado law recognizes that "the law of oil and gas is unlike any other area." *Elliott*, 407 F.3d at 1112; *Davis v. Cramer,* 808 P.2d 358, 359 (Colo. 1991). The Tenth Circuit acknowledged the differences between the law of the two states in rejecting appellant's reliance on *Rogers* on the basis that its application would create tension with authority applying New Mexico law. *Elliott*, 407 F.3d at 1114 n. 19. *Elliott* therefore does not support Merit's argument that individualized issues relating to the Royalty Agreements will predominate over the common issues in this case.

There is likewise no indication in *Rogers* that extrinsic evidence may be considered to refute or modify the implied covenant to market. Instead, the Colorado Supreme Court in *Rogers* looked strictly to the language of the royalty agreements to determine in the first instance whether the agreements were silent as to the allocation of post-production costs. *See Rogers*, 29 P.3d at 896 ("We review the language of each of the four lease types and conclude that the "at the well" language is silent with respect to allocation of costs."). Since I need not, and indeed may not, look to extrinsic evidence to apply the analysis set forth in *Rogers,* Merit's argument regarding such evidence does not weigh against a finding that Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).

Merit also argues against a finding of predominance based on variations in the language of the Royalty Agreements. In *Rogers*, however, the Colorado Supreme Court found that each of the four different royalty payment provisions at issue was silent as to the allocation of post-productions costs notwithstanding the variations in the language used. *Rogers*, 29 P.3d at 896-7.

13

Thus, variations in the language of the royalty payment provisions are immaterial provided that there is no express lease provision addressing the allocation of post-production costs. *Id.* at 897 & 906. Merit has failed to identify any specific language in the Royalty Agreements that would warrant special treatment under *Rogers*. To the extent that Merit is able to do so in the future, any resulting difficulties in maintaining a class action as currently proposed could be cured through selective decertification or utilization of subclasses. *See* Fed. R. Civ. P. 23(c)(5). Merit's argument that individualized issues relating to varying language the Royalty Agreements will predominate over the common issues in this case must, however, fail.

For the reasons set forth above, I am satisfied that the common issues of (1) whether Merit is responsible for all costs necessary to render the gas produced under the Royalty Agreements marketable; (2) determining the point at which the gas that Merit produces become commercially marketable; and (3) whether Merit's uniform practice of paying royalties under the Royalty Agreements based upon the selling price of raw gas to third parties that processed and delivered it to the commercial marketplace as opposed to the amounts received from the sale of the residue gas and natural gas in the commercial marketplace constituted a breach of Merit's contractual obligations to the class members predominate over any questions affecting individual members of the proposed class.

### 2. Superiority

The second requirement for class certification under Rule 23(b)(3) is that the class action be "superior to other available methods fairly and efficiently adjudicating the controversy." In making this superiority determination, relevant factors include

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs argue that the first factor - the class members' interests in individually pursuing their claims - weighs in favor of a finding of superiority because no class member has expressed any interest in pursuing a separate royalty underpayment case against Merit and they are unlikely to do so as a result of the relatively small amount of damages, in most cases less than $5,000, claimed by many of them. Although Merit counters that Plaintiffs' assertions in this regard are unverifiable, the fact that there is no separate litigation against Merit for royalty underpayments lends credence to them and also weights in favor of a finding of superiority under Rule 23(b)(3)(B).

Plaintiffs argue that the manageability factor under rule 23(b)(3)(D) also supports a finding of superiority based on that the fact that similar class actions suits have been successfully resolved on a class- wide basis in other Colorado courts. Plaintiffs' accounting expert has also opined that it would in fact be more efficient and economically feasible to calculate correct royalty payments through a single consolidated class-wide review than on a separate individual basis for each class member. Merit's argument that this case would be unmanageable as a class action is based on the same arguments regarding individual issues that I have already rejected in relation to other requirements under Rule 23. Accordingly, I conclude that Plaintiffs have demonstrated the superiority requirement of Rule 23(b)(3) based on an analysis of the factors set forth in sub-paragraphs A-D.

In sum then, I conclude that Plaintiffs have established the Rule 23(a) requirements of

numerosity, commonality, typicality, and adequacy of representation, as well as the Rule 23(b)(3) requirements of predominance and superiority. IT IS THEREFORE ORDERED as follows:

1. Plaintiffs' Motion for Class Certification [Doc # 35] is GRANTED;

2. The following class is certified in this case:

All persons and entities to whom Merit has paid royalties or overriding royalties on natural gas produced from wells located in Colorado, pursuant to leases or overriding royalty agreements that do not expressly authorize the deduction of the costs incurred to market such natural gas after it is severed from the wellhead (collectively, "Royalty Agreements"). The defined Class excludes: (1) any person or entity who is a working interest owner in a Merit well on whose behalf Merit has paid royalties for natural gas production; (2) Indian tribes; (3) the United States of America; and (4) Merit, its affiliates, its predecessors-in-interest, and their respective employees, officers and directors;

3. Plaintiffs' counsel of record are appointed as counsel for the class; and

4. The parties shall confer and submit to the court within 20 days of the date of this Order a notice to be served upon class members pursuant to Fed. R. Civ. P. 23(c)(2)(B). If the parties are unable to agree on the text of this notice, they shall submit Plaintiffs' proposed text along with a detailed list of Merit's objections.

Dated: June __19__, 2008 in Denver, Colorado.

               BY THE COURT:

               s/Lewis T. Babcock
               LEWIS T. BABCOCK, JUDGE