IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 07-cv-00916-LTB-BNB
(Consolidated w/ 07-cv-01025-LTB-BNB)

BERNARD HAROLD ANDERSON, individually and as representative plaintiffs on behalf of all other similarly situated

Plaintiffs,

v.

MERIT ENERGY COMPANY, a Delaware corporation,

Defendant.

---

Civil Action No. 07-cv-01025-LTB-BNB

NILES MILLER,
RAYMOND AND SALLY MILLER,
RICHARD PETERSON,
TED AMSBAUGH,
PAUL HUNGENBERG,
BUDDY BAKER, and
ROBERT L. ARMANTROUT, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

MERIT ENERGY COMPANY, a Delaware corporation,

Defendant.

---

ORDER

---

This case is before me on the following motions: (1) Plaintiffs' Motion in Limine to Exclude Evidence Introduced to Refute or Modify Merit's Implied Covenant to Market the Gas, or Regarding Alleged Customs or Practices in the Natural Gas Industry Regarding Royalty

Calculation Methods [Doc # 140]; (2) Plaintiffs' Motion to Strike Expert David L. Deal and Exclude Portions of John A. Bower's Rebuttal Report [Doc # 142]; and (3) Plaintiffs' Motion in Limine for an Order Excluding Defendant's Admission of Processing Agreements as Evidence of Marketability of Raw Gas [ Doc. # 144]. After consideration of the motions and all related pleadings, as well as the arguments presented at the hearing held on May 7, 2009, I conditionally deny the motions as set forth below.

## I. Background

Plaintiffs in this class action seek to determine the proper method of calculating natural gas royalties under Colorado law and to recover alleged past underpayments of royalties on natural gas production from over 700 gas wells in Colorado between January 1, 2001 and the date of trial. More specifically, Plaintiffs allege that Defendant Merit Energy Company ("Merit") improperly paid royalties based on the selling price of raw gas to third parties that processed the gas and thereby improperly imposed costs incurred to render the gas Merit produced marketable onto the plaintiff class.

## II. Standard of Review

### A. Motions in Limine

The purpose of a motion in limine is "to aid the trial process by enabling the Court to rule in advance or trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria,* 88 F.3d 136, 141 (2nd Cir. 1996) (citations omitted). Often, however, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context." *Mendelsohn v. Sprint/United Management Co.,* 587 F.Supp.2d

1201, 1208 (D. Kan 2008). In particular "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

**B. Expert Testimony**

Under Rule 702, a district court acts as a "gatekeeper" to ensure that proffered expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591 (*quoting* 3 Weinstein & Berger ¶ 702[02], p. 702-18). *See also U.S. v. Rodriguez-Felix,* 450 F.3d 1117, 1122 (10th Cir. 2006) ("Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."); *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004) ("Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has a relevant 'fit.'"); *U.S. v. Downing*, 753 F.2d 1224, 1242 (3rd. Cir. 1985) (one aspect of relevance inquiry is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

"[E]xpert witnesses in civil cases may testify in the form of an opinion or inference as to ultimate issues to be decided by the trier of fact if the testimony is not otherwise objectionable." *Oakland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998). "The testimony must assist the trier of fact in understanding the evidence or in determining a factual issue." *Id.*

"Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Id.* "[I]t is axiomatic that the judge is the sole arbiter of the law and its applicability." *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

## III. Analysis

### A. Plaintiffs' Motion in Limine to Exclude Evidence Introduced to Refute or Modify Merit's Implied Covenant to Market the Gas, or Regarding Alleged Customs or Practices in the Natural Gas Industry Regarding Royalty Calculation Methods

By this motion, Plaintiffs seek to preclude Merit from introducing five categories of evidence at trial: (1) any extrinsic evidence which purports to refute or modify Merit's implied covenant to market the natural gas at issue under the applicable Royalty Agreements; (2)

any purported explanation of the royalty payment provisions in any of the applicable Royalty Agreements which is offered to refute or modify Merit's obligation to pay royalties to the class members based on the commercial market prices received on Merit's natural gas production; (3) any evidence or jury arguments with respect to the conduct or sophistication of particular Class members; (4) any customs or practices by Merit's predecessors regarding their methods for calculating and paying royalties on Colorado natural gas production;

and (5) any customs or practices of other natural gas

producers regarding their methods for calculating and paying royalties on Colorado natura

#### 1. Any extrinsic evidence which purports to refute or modify Merit's implied covenant to market the natural gas at issue under the applicable Royalty Agreements

Plaintiffs argue that the exclusion of this category of evidence is dictated by *Rogers v.*

*Westerman Farm Co.*, 29 P.3d 887 (Colo. 2001), wherein the Colorado Supreme Court construed royalty provisions nearly identical to those at issue in this case without consideration of extrinsic facts or circumstances. In response, Merit states that it has no intention to introduce extrinsic evidence to refute or modify the implied covenant to market the natural gas at issue. Based on this representation by Merit, Plaintiffs' motion is conditionally denied with respect to this category of evidence.

**2. Any purported explanation of the royalty payment provisions in any of the applicable Royalty Agreements which is offered to refute or modify Merit's obligation to pay royalties to the class members based on the commercial market prices received on Merit's natural gas production**

Plaintiffs again argue that the exclusion of this category of evidence is dictated by *Rogers* In response, Merit states that it has no intention of arguing that the royalty payment provisions alter or modify its obligation to pay royalties consistent with *Rogers*. Plaintiffs' motion is therefore conditionally denied with respect to this category.

**3. Any evidence or jury arguments with respect to the conduct or sophistication of particular Class members**

Plaintiffs assert that Merit intends to use evidence of the understanding of some class members, only one of whom - Wilbert Wiedeman - is identified by name, as to how royalties were calculated by Merit's predecessors to contradict or modify Merit's implied covenant to market the gas. In response, Merit argues that the testimony of Mr. Wiedeman, the original lessee on many of the leases that Merit now holds and a party to many of the gas processing agreements that are binding on Merit to this day, is admissible not to modify the implied covenant to market under *Rogers* but rather to demonstrate the location of the market for the gas. Under *Rogers*, the determination of when gas is marketable, *ie*. both in the physical condition

such that it is acceptable to be bought and sold in a commercial marketplace and in the location of a commercial marketplace, is a question of fact for the jury. *Rogers*, 29 P.3d at 906. The personal experiences of Mr. Wiedeman, as well as other class members, may be relevant to this factual determination. The relevance of this testimony, however, cannot be determined outside the context of the trial. Plaintiffs' motion to exclude this category of evidence is therefore conditionally denied.

**4. Any customs or practices by Merit's predecessors regarding their methods for calculating and paying royalties on Colorado natural gas production**

Plaintiffs argue that this category of evidence must be excluded on the basis that it is irrelevant both because of the applicable time frame and because *Rogers* dictates the proper method for calculating royalties due on natural gas production in Colorado. Plaintiffs further assert that if Merit is allowed to introduce evidence of the royalty calculation methods of its predecessors then Plaintiffs should be able to introduce evidence that most other natural gas producers in Colorado have settled similar royalty underpayment class action cases.

In response, Merit argues that the royalty calculation methods of its predecessors are relevant so long as, consistent with *Rogers*, these methods were based on proceeds they received at the point where their gas first became marketable. Again then, Merit asserts that the subject evidence is relevant to the factual determination of when the gas is marketable and therefore admissible. Merit further states that it has no objection to the introduction of evidence regarding similar royalty underpayment class action cases.

The customs and practices of Merit's predecessors may be relevant to the factual determination of marketability. The relevance of this evidence, however, cannot be determined

outside the context of the trial. Plaintiffs' motion to exclude this category of evidence is therefore conditionally denied. I make no determination at this time as to whether any party will be permitted to present evidence at trial regarding the outcome of any other royalty underpayment class action lawsuit.

**5. Any customs or practices of other natural gas producers regarding their methods for calculating and paying royalties on Colorado natural gas production**

The arguments regarding this category of evidence are largely the same as those advanced with respect to the customs and practices of Merit's predecessors. The customs and practices of other natural gas producers may likewise be relevant to the factual determination of marketability. Since the relevance of this evidence cannot be determined outside the context of the trial, Plaintiffs' motion to exclude it is conditionally denied.

**B. Plaintiffs' Motion to Strike Expert David L. Deal and Exclude Portions of John A. Bower's Rebuttal Report**

Plaintiffs seek to strike Deal and Bower's statements concerning regulations promulgated by the U.S. Department of the Interior's Minerals Management Service ("MMS") regarding the calculation of royalties paid to the federal government for three reasons: (1) Plaintiffs assert that under Colorado law, as articulated in *Garman v. Conoco*, 886 P.2d 652 (Colo. 1994), and *Rogers*, the MMS regulations are irrelevant to the determination of proper royalty payments in this case; (2) Plaintiffs assert that Deal and Bower's testimony will effectively instruct the jury regarding legal issues; and (3) Plaintiffs assert that the opinions and testimony of Deal and Bower that they seek to strike were not timely disclosed. Specifically, Plaintiffs assert that all of Deal's report, which was provided with Merit's supplemental expert disclosures as a rebuttal report, and paragraphs 8-22 of Bower's rebuttal report should be stricken for these three reasons.

**1. Relevance of the MMS Regulations**

Plaintiffs' argument that the MMS regulations have no relevance in this case is first premised on their assertion that in *Garman* the Colorado Supreme Court "expressly held that MMS regulations are irrelevant to calculating royalties under agreements that are silent regarding allocation of post-production costs." In support of their interpretation of *Garman*, Plaintiffs

cite two footnotes in *Garman* that state as follows:

> While the federal government provides specific instructions regarding the calculation of gas royalties due under federal oil and gas leases ... it does not dictate the calculation of payments due for overriding royalty interests that burden federal lands. This court has held that state law generally governs private parties' dealings which affect oil and gas leases. .... We therefore decide the rights and obligations of an overriding royalty interest with reference to state law.

*Garman*, 886 P.2d at 657 n.11.

> The Garmans argue that the federal government's marketability rule should apply to their overriding royalty interest because the leases were issued by the federal government. We do not endorse this position but rather cite the federal government's practice to illustrate the marketability approach.

*Id.* at 658 n. 17.

As Merit points out, however, the Colorado Supreme Court cited federal regulations as instructive elsewhere in *Garman*. *See Garman*, 886 P.2d at 658 ("The Federal government also requires that a lessee 'place gas in marketable condition at no cost to the Federal Government ....'"); *Id.* at 661 n. 26 (in defining "marketable," the court noted that "[w]hen the federal government has considered [marketing operations/costs] it has distinguished between 'operations that *condition* a product for market, for which a lessee is not entitled to an allowance, and those that *transform* it. If transformation is involved, a manufacturing allowance is appropriate.'"); *Id.*

at 661 n. 28 (in addressing the difficulties that may arise when the lessee itself processes the gas it extracts, the court noted that "[t]he Federal Regulations are instructive on this point.").

Plaintiffs also argue that because the Colorado Supreme Court made no reference to the MMS regulations in *Rogers*, it thereby affirmed the "holding" of *Garman* that MMS regulations are irrelevant to the determination of royalties due under private leases. This argument acknowledges that the Colorado Supreme Court did not address the MMS regulations at all in *Rogers*. Furthermore, the court in *Rogers* held that "[t]he determination of whether gas is marketable is a question of fact, to be resolved by a factfinder." *Id.* at 906. I therefore conclude that Deal and Bower's proposed testimony regarding the MMS regulations is not precluded as a matter of law pursuant by either *Garman* or *Rogers*.

Merit argues that Deal and Bower's testimony about the MMS regulations is being offered to assist the jury in determining, as required by *Rogers*, when the gas extracted by Merit is in the physical condition necessary for sale in the commercial marketplace and in the location of the commercial marketplace. Merit also argues that the MMS regulations are consistent with the general guidelines articulated by the Colorado Supreme Court in *Rogers* but are more specific and therefore likely to assist the jury in making its determination of marketability. Finally, Merit argues that the testimony of Deal and Bower is, in essence, no different than that of Plaintiffs' experts who also seek to assist the jury in determining marketability through the use of terms and theories not specifically set forth in *Rogers*.

I agree that Deal and Bower's testimony regarding the MMS regulations, subject to appropriate limiting instructions to be determined at trial, may be of assistance to the jury in making the factual determination of marketability as defined by *Rogers*. Plaintiffs' motion to

exclude this testimony is therefore conditionally denied.

**2. Legal Nature of the Testimony**

Plaintiffs argue that the challenged testimony of Deal and Bower is impermissible because it is improper opinion testimony about the legal standards, *ie.* the MMS regulations, which should govern this case. Merit responds that Deal and Bower's proposed testimony is no different than that of Plaintiffs' experts testimony as it will merely seek to provide the jury with information that may be of value to it as it seeks to define the "commercial market" as required by *Rogers*. Merit further asserts that the jury will be cautioned that it is free to reject the opinions of any or all of the experts and that additional cautionary instructions may be given to ensure that Deal and Bower's testimony is given proper consideration.

Clearly, *Rogers* does not provide all of the definitions and standards that the jury will need in deciding this case. Expert testimony, including that of Deal and Bower, may help fill in these gaps. Although Deal and Bower's proposed testimony may be based on legal standards, it does not necessarily seek to direct the jury to apply the same legal standards in this case. Deal and Bowers must refrain, however, from testifying in the exact language of the MMS regulations though they may closely approach it. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* §702.03[5] pp. 702-48 - 702-49 (Joseph M. McGlaughlin, ed., 2d ed. 2008). Based on the limited information regarding the proposed testimony of Deal and Bower that is presently before me, Plaintiffs' motion to strike this testimony on the basis that it reflects impermissible legal opinions is conditionally denied.

**3. The Timeliness of Merit's Expert Disclosures**

Plaintiffs argue that Merit's disclosures of Deal and Bower's opinions regarding the

MMS regulations were untimely because they were made as part of Merit's January 5, 2009 supplemental Rule 26(a)(2) disclosures and are not proper rebuttal to the opinions of Plaintiffs' experts whose reports make no reference to these regulations. In response, Merit argues that Deal and Bower's opinions regarding the MMS regulations are proper rebuttal because they provide an alternative method of defining the commercial market for gas, an issue that is addressed by each of Plaintiffs' experts. Merit also emphasizes that Plaintiffs have not identified any prejudice to them by its disclosure of these opinions 4 months ago with no trial date currently scheduled.

I conclude that the timing of Merit's disclosures does not warrant striking these disclosures and the related testimony. In conclusion, none of the three reasons proffered by Plaintiffs provide a basis for the relief sought.

**C. Plaintiffs' Motion in Limine for an Order Excluding Defendant's Admission of Processing Agreements as Evidence of Marketability of Raw Gas**

By this motion, Plaintiffs seek to exclude "the introduction and use of the gas processing agreements between [Merit] and companies gathering, processing, and/or marketing gas produced from the Subject Class Wells as evidence of sales at the wellhead, or of the marketability of such gas at any point before the tailgate of the processing plants, on the grounds that such agreements are wholly irrelevant to the location of a real, known, viable commercial market for the first marketable product produced from the Class Wells at any point before delivery of residue gas and natural gas liquid products to the processing plant tailgate ...." More specifically, Plaintiffs request a ruling (1) that Merit's contracts and transactions with its processors are contracts for gathering, processing and marketing services and not true "wellhead sales contracts" nor true "sales at the well; (2) that Merit and its counsel and witnesses may not

use the processing agreements to argue or prove that Merit's gas is marketable at the well; and (3) Merit's counsel and witnesses are not to characterize the gas processing agreements as "wellhead sales contracts" or "sales at the well" at trial.

Plaintiffs argue that the requested relief is appropriate first because the the gas processing agreements are in reality contracts for services notwithstanding the "buying and "selling" language used in these contracts and the transfer of title to the gas to the processor. In support of this argument, Plaintiffs stress that the processors are not obligated to pay Merit any amount for the gas until it is processed and sold at a location far beyond the well site for an amount that cannot be determined at the time of transfer. *See Colorado Auction Serv. v. City of Commerce,* 800 P.2d 998, 1003 (Colo. 1990) ("A 'sale' is commonly used to refer to a contract whereby the ownership of property is transferred from one person to another for a sum of money or other valuable consideration."). At that point, the processors pay Merit a percentage of the sale proceeds they receive.

Merit's response to this argument notes that Plaintiffs and their experts, as well as representatives of the processing companies, have repeatedly referred to the transfers of Merit's gas near the wellhead to the processing companies as "sales" both in prior pleadings and deposition testimony. Merit also argues that the inclusion of the phrase "valuable consideration" in the definition of "sale" in *Colorado Auction Serv.* demonstrates that the gas processing agreements are sales contracts despite the fact that Merit does not receive any money at the time title to the gas passes to the processors. Merit cites cases from the Tenth Circuit and elsewhere in which courts have concluded that similar "percentage of proceeds" contracts are contracts for the sale of goods. *See e.g. BTA Oil Producers v. MDU Resources Group, Inc.,* 642 N.W.2d 873

(N.D. 2002) ("the contract specifies that title to the gas passes ... at the wellhead, before any processing of the gas takes place, and sets a price for the gas to be paid .... This is a contract for sale."). *But see State v. Davis Oil Co.,* 728 P.2d 1107, 1110 (Wyo. 1986) (rejecting oil producer's argument that passage of title to gas processor at the wells constitutes a sale "at the wells" under oil and gas lease).

Merit's argument that the relief requested by Plaintiffs is not appropriate in the context of a motion in limine is compelling. Without all of the evidence relating to the gas processing agreements before me, I am unable to conclude that these agreements do not constitute sales contracts as a matter of law. Nonetheless, even if the gas processing agreements are properly classified as sale contracts, the mere fact of a sale is only some evidence of a market for Merit's gas. *Rogers*, 29 P.3d at 910.

Plaintiffs next argue that even if the gas processing agreements constitute sales contracts they do not reflect the sale of Merit's gas into a commercial market as defined by *Rogers* as a matter of law. In support of this argument, Plaintiffs direct my attention to the Colorado Supreme Court's recognition in *Rogers* that "gas is not marketable merely because it is sold" and that "gas must be more than merely sold in order for the lessee to meet the duty to market the gas. Instead, ... the gas must meet the standard of being suitable for a commercial market." *Id.* at 610 & 611. Plaintiffs also cite the Colorado Supreme Court's use of the phrases "known and real," "viable," "commercial marketplace," "in which goods, commodities, securities, services, etc, are bought and sold" to describe the market for gas. As previously noted, however, under *Rogers*, the question of marketability, including the location of the commercial marketplace for the gas, is ultimately a question of fact for the jury. *Id.* at 906. Outside the context of the trial, it

is impossible for me to determine whether the gas processing agreements are relevant to this factual determination.

For the reasons set forth above, IT IS HEREBY ORDERED that

1. Plaintiffs' Motion in Limine to Exclude Evidence Introduced to Refute or Modify Merit's Implied Covenant to Market the Gas, or Regarding Alleged Customs or Practices in the Natural Gas Industry Regarding Royalty Calculation Methods [Doc # 140] is CONDITIONALLY DENIED;

2. Plaintiffs. Motion to Strike Expert David L. Deal and Exclude Portions of John A. Bower's Rebuttal Report [Doc # 142] is CONDITIONALLY DENIED; and

3. Plaintiffs' Motion in Limine for an Order Excluding Defendant's Admission of Processing Agreements as Evidence of Marketability of Raw Gas [ Doc. # 144] is CONDITIONALLY DENIED.

Dated: May 13 2009 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE